and David McKinley, officer, et al. Argument not to exceed 15 minutes for the plaintiff and 15 minutes to be shared by the defendant. We have Mr. McGrady and Mr. Burns. You may proceed for the appellants. Your honors, good morning. May it please the court, my name is Robert Burns. I'm a member of the Bar in Nashville, Tennessee. In this appeal, I represent the two police officers who were sued individually, Dave McKinley and Mitch McDonald. Mr. McGrady, my co-counsel, represents the City of Lebanon. As you've heard, this was a joint appeal, so our time this morning is going to be split. This is a tragically unfortunate... Are you reserving any rebuttal time? I am, and I've made arrangements with the court one minute. Thank you. This is a tragically unfortunate set of facts that that led us to a lawsuit and to this appeal. We're here on two issues, one a jurisdictional issue, and I would submit, hopefully also a merits issue. I would urge this court to accept jurisdiction of this appeal. This case does not involve a classic factual dispute or a dueling account of what happened. If your honors are aware, there are not one but two videos that capture virtually everything that happened regarding the pursuit and interaction between Officer McKinley and Officer McDonald and Mr. Thompson. To be clear, what occurred in the pursuit on April 28, 2010, is not an issue. That is not an issue before the court. The issues that the parties are here on really arise from a point in time that the vehicles came to a stop. Mr. Thompson's car, he lost control of his car after a vehicular pursuit that lasted between five and six minutes. He went off on the side of a highway, went down an embankment. He was still in the car. The first officer that arrived on the scene was McKinley. He dismounted his car, proceeded to the car with his weapon out. Second officer McDonald stayed on top of the roadway behind the car with his weapon drawn. Everything related to the vehicular pursuit itself is not an issue. Where the issues start is at the point in time when McKinley, the first approaching officer, got to the car. We submit that the district court erred, and I will submit erred, I think, mightily, if you will, on the basis of finding that there was an additional dispute in this case over the direction of which Officer McKinley held his gun at the time that he accidentally or unintentionally discharged his weapon, and whether his bullet out of his gun made impact with either Mr. Thompson or Mr. Thompson's car. The reason that I contend that that was a significant error by the district court is because the proof before you will show that the plaintiff admitted that there was no material issue on this set of facts. The plaintiff admitted at the court below that there was no proof that McKinley's bullet hit either Mr. Thompson or hit the car. The plaintiff's expert admitted the same thing. Wasn't the record that they could not establish that that was McKinley's gun, but why couldn't a reasonable jury find that the bullet jacket found in the car came from McKinley's weapon? Your Honor, I respectfully disagree based upon the record. The statement of undisputed facts to which the plaintiffs have responded established, in my opinion, that there was no issue in terms of whether the McKinley bullet hit either Mr. Thompson's body or hit the car. That statement of undisputed fact is number 326. It was submitted as part of the motion for summary judgment, and it read the bullet discharged from McKinley's weapon did not strike Thompson. The response to that was admitted. It did not strike Thompson. It did not strike the car. I'm sorry, is all that that says that it did not strike Thompson? Correct, but the next one, 327, indicates the bullet discharged from McKinley's weapon did not hit Thompson's car. Response, plaintiff submits that the forensic evidence evaluated by the LPD and TBI do not indicate that any bullet fired from McKinley's gun struck Mr. Thompson or his vehicle. Well that's not exactly an admission that it didn't. Under the record that is before you, given the burden that the plaintiff has to establish that there is a disputed material fact and that that disputed material fact supports the idea of a seizure, we submit that Judge Nixon got this wrong. And you think that the presence of an additional bullet jacket is to be ignored? No, I don't think that it's to be ignored, but based upon the admissions with the record before you, I think that that issue has not, it hasn't been waived, but I think that it has not been disputed in terms of whether or not the errant McKinley bullet, if you want to call it that, hit Mr. Thompson or hit Mr. Thompson's vehicle for purposes of creating an issue as to whether a seizure occurred under HODAR-ED. The seizure looks at all of the circumstances, correct? Well, I think the focus in this case has to be whether or not there was any physical contact between Officer McKinley and Mr. Thompson. Why does there have to be physical contact for there to be a seizure? Well, HODAR-ED requires two standards. One, physical contact where there's actually a hands-on seizure of the person, or there has to be some type of indication by the suspect, the person that is allegedly being seized, that they have yielded to a show of authority. What about McDaniel's testimony in his in response that there had been a statement, raise your hands, I'm not sure exactly what the statement was, but hands up, I'm sorry I can't remember, but his testimony was that he saw Thompson's upper shoulders moving around. Couldn't a jury interpret that to be submission to the raise your hands? I'm not sure what a issue and whether or not Mr. Thompson was raising his hands or moving around in respect to the statement of undisputed facts that were submitted specifically on that issue, number 254. We submitted that as officer, quote, as officers were yelling for Thompson to put his hands up, Thompson kept moving. Response, plaintiff admits that there is no evidence regarding Thompson's response to the officer's command as Mr. Thompson's actions are not captured on the videotapes. I respectfully suggest that that issue for purposes of this appeal was waived, it was not brought up. So your client can give different deposition testimony regarding what he saw and because the admission says it's not on the video, you say there's not a dispute of fact, don't you think a jury has the opportunity and right to make that determination? Based upon the record that and what was put together with respect to the district court's opinion, I think that that issue respectfully has been waived. I do not think that that is an issue that has been presented that they can now travel on to try to create or to say that there isn't. Can they travel on the fact that the microphones in your estimation were turned off and the two police officers, despite direction to sit in separate police cars and not discuss the matter, turned off their microphones and together discussed what occurred? Why is that not something that a jury could consider regarding the veracity of what those police officers subsequently report? That occurred after the shooting, Your Honor. Second, in terms of its relevance for what occurred as compared to what the video shows, as well as the given the short time frame it completely got away from me. In terms of the record that is before the court, I do not see that that is a material factual issue that came into consideration for the court or should be in consideration for Your Honors today. Isn't the law that if you can point to specific facts that question the credibility and veracity of a in determining whether a dispute of fact exists. And I would say particularly in the case where the your opponents has no witness because he was killed at the scene. Your Honor is correct. I'm aware of the law on that. That is something that the court can consider. But in considering that, the court cannot ignore other undisputed facts, other admissions and the record as a whole that is before us. There's much in the video that the plaintiff wants to argue about. I don't know what the court's procedure is in terms of reviewing the video. I would certainly encourage you to do that. One for purposes, obviously, of accepting this appeal and keeping it, but also ruling on the merits. Are there any other questions? I'll be happy to address them. Otherwise, thank you. Thank you. Thank you. May it please the court. My name is Mark McGrady. I'm here on behalf of the city of Lebanon, and I would request to reserve one minute of time for rebuttal. The argument I would like to make in my very brief time cover a number of issues. One is I want to point to the court's attention that there has been a decision in a case factually similar to this one by a different panel of the Sixth Circuit that's come down since we briefed this case on on a number of the issues in the case that is Pollard versus the city of Columbus. We decided in March 7 80 F 3rd 3 95. The facts in that case involved a pursuit. There was a wreck. The way the plaintiff ended up being a wrongful death or a shooting case. The driver was just disabled in the car and then was subsequently shot by police officers, and it went up on qualified immunity as well as pendent pendent appeal by the by the city. Um, that I would suggest is specifically relevant on the briefing on the issue of whether McDonald because the issue in that case is whether the officers use reasonable force because the the the driver was disabled, but he had was making movements that look like he was shooting. It's like this case in the fact that, in fact, the guy really did not have a gun. But because there was a finding by the Sixth Circuit panel that the the officer had a reasonable belief that the deadly force was needed to protect against serious bodily injury to either himself or or others. Finding in that case was that the officer did have reasonable belief because of the gestures moving around like like the person was was pointing the firearm. Therefore, the officer was justified shooting. In fact, it was a number of officers, like five officers shot a total of like 80 bullets in that case, killing, killing the plaintiff. So I would want the court to direct the court's attention to that. Because there was a finding that that the use of force was reasonable by the officers that did the shooting. There was no constitutional violation, obviously, and therefore the city's appeal on the issue of whether it could be liable under 1983 was also granted, and it was held that the city could not be liable because there was no constitutional violation. Whether the court agrees with whether the, you know, if the court finds the same thing with respect to McDaniel, that there was a that his use of force was reasonable under that case, then the city cannot be liable for a constitutional violation by McDaniel. We spent most of our time in our brief discussing the liability of McKinley and the issue, as counsel for McKinley and McDaniel has indicated, the issue there we see as seizure, is whether there was a seizure or not. One of the things that I cannot find law in the Sixth Circuit on, I found it in the Tenth Circuit, is whose job is it, you know, Judge Stranch mentioned a while ago, can't the jury decide whether this is a seizure or not? The Tenth Circuit says that's not a decision for a jury. It is a legal question for the courts to decide whether a seizure has occurred or not. And would also suggest the rules are in this circuit that once qualified immunity is raised by individual officers, the burden to prove that immunity is not available is on the plaintiff in the case. So that means the plaintiff has to prove two things. That there was a constitutional violation occurred and that even if a constitutional violation occurred, then you go on to the step of whether or not it was clearly established that it was a constitutional violation. But under that law, if there's a dispute of material fact, we don't have jurisdiction. Isn't that correct? Correct. If there is a dispute of material fact, but that question is because you don't want to take things away from a jury, what I'm suggesting is I'm not sure it's clear that it is the jury's decision to make in this case whether or not McKinley seized McDonald or not. One of the cases from the Tenth Circuit I know is cited in some of our materials is United States versus Salazar. It's on the criminal side, but there are a number of cases from that circuit as well as I remember from the third that say that's a question of law for the courts whether a seizure occurred or not. So that is something we would ask the court to consider. What little time I have left, we also have made an argument that the city is not liable under state law because it has immunity under the Tennessee Governmental Tort Liability Act. We would also assert that it doesn't matter whether McKinley fired his but under the Tennessee Governmental Tort Liability Act, it does make a difference, doesn't it? I think the argument I was making there, if I'm remembering the place you're referring to, is that McDonald intentionally shot Thompson. And so it is, and we cited the case from the Tennessee Supreme Court, I think it's Hughes versus Metro, that basically says that if you do something intentionally, you can't dress it up, go around the fact that it's an intentional tort by saying that you negligently assaulted somebody. Though the question becomes whether there was negligence that then resulted in other intentional acts. And there are several cases that talk about, I think the nursing home case speaks of whether there was negligence on the part of the nursing home in employing someone who subsequently intentionally harmed one of the patients there. So there you have that combination again. You have, you could have a negligent claim against a governmental entity, even if it grows out of an intentional, in that case, assault and battery. Correct? Isn't that the law? That's the Coffey County case. Limbaugh versus Coffey County. But in that case, your honor, there was one of the distinctions between Limbaugh, and we discussed Limbaugh in great detail in our brief, but the distinction is that there was no allegation of a civil rights violation in Limbaugh. And one of the exceptions, you can never hold a city liable unless it's for negligence. They're never vicariously liable for intentional acts. And one of the exceptions is civil rights. And we contend it's a pleadings test. If you plead civil rights, which they have in this case, then you cannot maintain a negligence action in the city in the same case. That's the decision the legislature made. Do you have any more questions? We do not. Thank you. May it please the court. I'm Andy Clark of the Memphis Shelby County Bar. I represent the plaintiffs in this case with Ms. Denise Banks. I'd like to start out my argument with just a quote from a case, an opinion written by Judge Straunch in Thompson versus Greta. It says, and I think it's applicable to this case, it says, the officers here failed to satisfy the requirement that they concede the most favorable view of the facts to Thompson. This is precisely the type of factual dispute over which the court lacks jurisdiction. Once a defendant's argument drifts from the purely legal into the factual realm and begins contesting what really happened, our jurisdiction ends and the case should proceed to trial. Mere conclusory statements that the officers construe the facts in the light most favorable to the plaintiff cannot confer jurisdiction upon this court. We have learned by experience that the defendants sometimes attempt to simply protract the litigation and manipulate fact-law distinctions to create the appearance of jurisdiction. Disputes of fact in that case clearly exist and deprive of jurisdiction. In order, and the plaintiff's position is, and we filed a motion to dismiss the appeal immediately upon the filing of this, the notice of genuine issues of material fact from everything surrounding this pursuit and the shooting, basically what you have in this case is there are videotapes. And the videotapes is a red herring that I think comes from Scott v. Harris. It says if we have videotapes, we get to have to have it independently reviewed. The factual disputes are not going to be blatantly contradicted by the video evidence. There is no video evidence, like in Scott v. Harris, that showed everything that happened. Everybody in this tape, they don't see certain facts that McKinley says happened, that he was running down the hill with his finger on the trigger, that he stumbled while he was trying to switch his gun from his strong hand to his weekend to grasp his ass to break a window that McDaniel said was open. You know, this is the classic factual dispute. In addition, and I think Judge Spruance pointed out the line of cases that was picked up upon by Judge Nixon in this case, both these officers, one of them, if we want to talk about admitted facts, the city and McDaniel both admitted in statement of fact, our response to our statement of facts, that McKinley's testimony in deposition in the discovery is false, because he said that he applied for a position, you know, that when he applied for his job in Lebanon. I mean, McKinley is a repeated liar. We have produced evidence in the record that is undisputed that he provided false information in his application for a job as a police officer. He was terminated after the fact for using his firearm in an improper way and lying about what was on a tape to which the criminal investigative officer said constituted aggravated criminal perjury. McDaniel, who is the better of the two cops, was terminated for beating up his pregnant wife and then lying about it in an investigation. They both took CVSA polygraph tests before they were fired and they both showed deceit in two of the nine relevant questions. These are people you cannot take, you know, we cannot basically accept anything that they say in support of it. I think Judge Strauss also pointed out the line of cases like from Bazan versus City of Hildago, which said, we can't allow a defendant to shoot the only witness and then to argue we have no proof to contradict him. In this case, what is... What's your best proof for disputes of material fact? Well, the first... You've got the question of veracity and credibility. Well, we have two issues. They have argued that there's no seizures. We have two different officers and they have to be looked at somewhat differently under the facts that we have. So we have an argument that, I mean, the way that I think this court would only have jurisdiction would be if the defendants, with respect to McKinley, concede this. One, that there was a pursuit, that the car crashed, it was stationary, that Thompson didn't move and McKinley ran down the hill and did not see any threatening movement from Thompson and shot him and shot at him. That is one set of facts, that the facts that we say is that McKinley ran down the hill in violation of policy, in violation of his traffic enforcement policy. He failed to illuminate the scene. He failed to take cover. He failed to address the suspect over the PA as required by policy, that he went down the hill with his finger on the trigger to his gun in violation of policy, that all this occurred. The one factor is that all this occurred from the time of his first command till his shot is seven seconds. And then after seven seconds, 13 more shots are made by McDaniel. So when McKinley gets down there and says, my gun accidentally discharged, what McKinley is having the court and the jury to with my hand on the gun, with my gun out. He said, McKinley said he did not have his finger on the trigger. There's testimony from Sergeant Kelly that was provided over a dispatch tape that he actually told Sergeant Kelly he ran down the hill with his finger on the trigger. When we're looking at these cases with the death, sometimes the plaintiff has to disprove and to refute summary judgment by showing the inconsistencies in the officer's testimony. Of what happened. So if McKinley said... Looking at the jurisdictional problem here, which is getting to be a thornier and thornier problem for all of these cases. It seems like what we have, once the Supreme Court came out with the Plumhoff decision, is that Johnson v. Jones, which appeared initially to really limit our jurisdiction is itself very limited. So would you say that this, that what you are now presenting to us is a question of, as Johnson v. Jones talked about, whether there is sufficient evidence in the record to proceed just on the basis of the plaintiff's claims or whether this is hotly disputed because essentially everything is going to depend on a jury's determination of Well, I think those aren't mutually exclusive. I think there is a line of case and an argument that says in this particular case with these particular cops, with their particular history, and with this particular record of dishonesty, that that in and of itself, and I've been doing civil rights cases for 22 years. I've never had this, you know, we always had the disputes. I think what the defendant is arguing is that the court got the evidence wrong. That the court, I think this is a Johnson v. Jones situation. I think they're trying to say there is an accidental discharge. There's no proof. We can't disprove that McKinley didn't slip and fall as he was trying to move. So you're saying this is a sufficiency question, which is what Johnson v. Jones dealt with. And we're saying, and I think where Plumhoff and Scott have caused some issues for the Court of Appeals with respect to analyzing is you had tapes in both those cases. You had tapes that showed certain things. And unfortunately, I was in both those cases. So I know a little bit about them. In this case, what we have is, and they have kind of ferreted out kind of an exception that says, wait a minute. We're not going to, the plaintiff says I wasn't doing something wrong. If it's on tape and he is, we can't just make, let the plaintiff manufacture something. But those tapes showed what the fact was that was the courts in those two cases said was dispute, you know, that was relied upon by the court in showing a dispute. In our case, when they're trying to say McKinley acted correctly in violation of all his policies, which is another reasonable consideration for the courts in looking at qualified immunity, what a reasonable officer would do, a reasonable from the Martin v. Broadview case, and Hope v. Pelzer says you can consider that, but that he actually ran down the hill, finger on the trigger, grabbed his gun from his right hand to put in his left hand, which you're not supposed to do, to grab his ass to break out a window, which McDonald said was open. Now, none of that's on the tape. Secondly, after he shot, Sergeant Kelly arrived on the scene and said, what happened? He said, I shot one time. I shot one time. He said that two times on the tape. After he does that, they say, get to your separate cars. McKinley and McDonald go up and turn off their mics and come back and say, I accidentally discharged. If that's not a factual dispute, I don't know what is. I mean, in this case, we don't have Mr. Thompson because he was shot dead ten seconds after his car stopped, seven seconds after he was ordered to show his hands, and McDonald, in his discovery response, has said one of the commands was show your hands or the other one was get out of the car. You're not even supposed to have inconsistent commands according to policy. So what we have in kind of looking at this, I mean, this is, you know, I think qualified immunity as a rule is kind of the rules. It used to be in these Fourth Amendment cases, there were so much factual issues that arise in that type of case that are factually based that before Scott and Plumhoff, that I think there was a greater, and before Saussure, there was, you know, less reluctance to grant it. We're having the Scott and the Plumhoff have had the courts kind of in a quandary of what to do with them. But this is a classic Fourth Amendment issue. This is a good, is it reasonable? I think in kind of getting down to the jurisdictional question, trying to tie everything up with a bow, is unless McDanald, McKinley says, is it unconstitutional, panel, to run down the hill with your finger on the trigger and shoot somebody, at somebody intentionally who was making no threat, unless he admits that there's no jurisdiction, unless McDanald admits that under the best case scenario that he had his eyes trained on Thompson, that he had his gun on Thompson, that Thompson made no threatening moves, and he heard a noise and saw McKinley slip and shot 13 times without identifying a threat, unless he's going to make that argument, I don't think this court has jurisdiction. And that's the point. I think in a lot of these cases, they'll come up here and say, I'm not asking a factual question. But the judge got it wrong. It's a factual question. There are a couple issues that they raise that I'll kind of address with respect to qualified immunity. With respect to seizure, they argue, both parties argue, you know, Hodari D. Hodari D. doesn't apply. I mean, this is not a case where there was somebody who continued to flee. All the cases that they cite in support of their position, and kind of in disrespect to Judge Nixon's, you know, I thought thoroughly reasoned opinion, were basically cases where the suspect continued to flee. There is no evidence that Mr. Thompson attempted to flee after he crashed. That's what distinguishes it from all the cases that they cite. With respect to qualified immunity, with respect to what... You're saying that had he been, had he not crashed yet or had his car still been mobile, even though he'd gone off into the pit there, but he was spinning his tires and trying to get out of there, that's a different analysis from what it appears happened here. Unquestionably, that's what happened in Plumoff, which the Supreme Court ultimately held. That's what happened in Gallus v. McKee. That's what happened in Scott v. Clay County. In this case, we have a different, we have, you know, we know that, and one thing I think we, I've been working this case so long, you know, sometimes you forget about things. We got seven seconds. I mean, is it, I mean, it wouldn't even a jury have a right to consider whether or not somebody can even respond. You know, McKinley, McKinley said, I ran down the hill with my gun draw because he might be injured. I didn't know a gun would be used for medical treatment, but in that amount of time, you know, I mean, is it reasonable to do that? They argue that the law wasn't clearly established. I would submit that Garner does apply with obvious clarity to this type of case, and Garner, under the facts viewed in the most favorable way to us, there was never a threat. If we look at Garner, that you can't use deadly force to apprehend a fleeing suspect, and you look v. Graham, you look at the severity of the crime, the immediacy of the threat, and whether there was flight, I think those apply, and those cases have been applied, have been applied to a police shooting of a vehicle in Sigley versus Parma Heights in Smith v. Cupp in 2004-2005 timeframe, and they distinguished Brousseau, which Brousseau was a case from the U.S. Supreme Court, where there was an officer who was actively, all these other cases have some threatening movement, a turn, a motion, an object, a failure to comply with a command with something. We even have in this case for the court, if the court wanted to look at it, we had McDaniel demonstrate on the court that he got shot 14 times for moving his shoulder. I mean, it's, the record's fully developed with respect to these factual disputes. This is just one that, with all due respect to the arguments of opposing counsel, is clearly a factual scenario. I don't think they have conceded. If there was, if there was a determination that there was not a seizure in this case, do you still have a substantive due process claim that you raise? We have. We raised it in the pleadings. It was not, you know, the court analyzed our thing under the Fourth Amendment. We cited a case in our brief called Leisure. It was a district court case, but the analysis is the same. Would there be a factual dispute as to whether an officer runs down the hill in the dark, without, in violation of policy, without illuminating the scene, without getting on the PA, to do a maneuver that he's not trained in, that he's not supposed to do, to risk it? I think that might inch close to the shocking, conscious, shocking standard. But if the court analyzed it under the Fourth Amendment, you know, we, it has, it was pledged, Judge Strach, and I think, I think the court found the seizure thing all right, but as an alternative, we do think that this could raise a genuine issue of material fact with respect to a substantive due process claim. Thank you. Thank you, Counsel. A couple of points in follow-up. With all due respect to opposing counsel, I don't remember a substantive due process claim being raised or briefed. It's not before the court today. A lot of talk about the factual disputes. This court, in its order of October 24, 2014, said, but this factual dispute standing alone does not inherently divest us of jurisdiction because the officers are also arguing that no Fourth Amendment violation occurred. And if a violation did occur, that their actions did not violate clearly established law. For clarification here, the threat isn't so much what was happening or what Mr. Thompson was doing in the car. It was the combination of information and the events that occurred, which we know are undisputed, that  saw a muzzle flash and he saw another officer fall. This is the classic scenario of an officer in the field being forced to make a split-second judgment. I also want to argue that this is not the obvious case, given the highly nuanced particularized facts and the dicing and slicing of issues that you will hear that requires more analysis for qualified immunity and the purpose of whether the law under these particular facts was clearly established. We say that it was not. Thank you. Thank you, counsel. The case will be submitted. Oh, I'm sorry. You do have one more minute of rebuttal here. Two very quick responses. The city submits that the decision of whether McKinley seized Mr. Thompson. The question is not whether the flight ended, we think, under the applicable law. It is whether Thompson submitted to the show of authority. And there is completely a lack of evidence in the case that there was any submission to the show of authority. I know there's, I think it's the Barron's decision that talks about if you're sitting in a But that's not a different context when you have the end of a pursuit and the person has not done anything except move around is the only evidence we have here. The second thing on the city's immunity under state law, the arguments made the city can't have it both ways. Well, the plaintiff can't have it both ways. If you sue for civil rights, you cannot join the city under state law. That is what the Now, thank you, counsel. The case will be submitted.